OPINION OF THE COURT
RENDELL, Circuit Judge.
Cora F. Lindquist, individually and as executrix of the estate of James 0. Lindquist, appeals the District Court’s order granting judgment in favor of Buckingham Township and the Board of Supervisors of Buckingham Township on the Lindquists’ civil rights action under 42 U.S.C. § 1983. This case presented, at both the district court level and on appeal before us, a heavily fact-laden saga of the attempted development of land by plaintiffs, seemingly thwarted at every turn by defendants. The plaintiffs’ forty-five page complaint leveled allegations of bad faith and conspiracy against defendants based on their conduct. The District Court held a six-day non-jury trial, hearing first hand both sides of the story. Before the District Court’s twenty-one page opinion issued, we made clear in United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir.2003), that the standard applicable to substantive due process claims involving executive action in land-use disputes is the “shocks the conscience” standard. The District Court held that “there [was] nothing in the facts ... to prove that the defendants’ conduct was so egregious as to be ‘conscience shocking.’ ” We can find nothing in the record that would cause us to find error in the District Court’s reasoning or ruling. Our dissenting colleague paints a picture of dastardly deeds, and, while we might credit such a portrayal if the trial court had perceived in the extensive recounting of the saga the reprehensible animus, attitude and scheming upon which the dissent relies, that is not the case. Moreover, the objective facts, as revealed in the hefty 5,559-page appendix before us, do not necessarily take us in the direction the dissent suggests, causing us to find no error. Clearly, we and the trial judge just view the record differently from our dissenting colleague. We see no clear-cut constitutional violation and will therefore affirm.
I.
The Lindquist farm, located between York Road and Upper Mountain Road in Buckingham, Pennsylvania, consists of a 100-acre parcel owned by James 0. Lind-quist and Cora F. Lindquist, and a 150-acre parcel owned by James 0. Lindquist and his three children.[1] Beginning in early 1994, the Lindquists sought to develop the property as a cluster subdivision. Throughout 1994 and 1995, they and their representatives worked with the Township, its Board of Supervisors, its Planning Commission and its consultant to facilitate the proposed development of the property.
Based on these discussions, the Lind-quists prepared a set of preliminary plans. Development was to occur in two stages: Phase I, consisting of 111 single-family lots on the front parcel, and Phase II, consisting of 110 single-family lots on the back parcel. On March 29, 1996, the Lindquists submitted an application for preliminary subdivision approval of Phase I (“Original Phase I Plan”).
*771 The Township’s consultants evaluated the Original Phase I Plan for compliance with the Township’s Subdivision and Land Development Ordinance (“SALDO”) and the Zoning Ordinance.[2] It was understood that waivers from certain SALDO requirements would be necessary before the plan would be approved, and there appeared to be no objection to these waivers at a May 1, 1996 meeting of the Planning Commission. However, later that month, one consultant issued a review letter concerning the plan’s proposed storm water management facilities that imposed upon plaintiffs what they believed to be “onerous” and unwarranted requirements with respect to water run-off.
The Lindquists made a formal request for SALDO waivers to the Board on August 9,1996. The Board took no action on the waiver request, but recommended that the Lindquists meet further with the Township staff to settle the waiver and other issues. The Lindquists met several times with the Township staff, but the parties were unable to reach a compromise that would be accepted by the Board. Finally, the Lindquists went back to the Board for clarification, submitting two proposed plans, including the Original Phase I Plan and a “by-right” alternate plan that met all SALDO requirements.[3] In response, the Board: (1) directed the Lind-quists to proceed with the Original Phase I Plan; (2) consented to grant the SALDO waivers necessary to develop the property under the Phase I Plan; (3) determined that the Plan would be processed under the August 24, 1994 Zoning ordinance, as amended December 13, 1995; and (4) required the Lindquists to work with the Township to develop a wastewater system that would integrate the development with the regional sewage system.
In late 1996 and early 1997, the Lind-quists and the Township’s consultants worked on the wastewater issue. Meanwhile, the Board enacted an amendment to SALDO that prohibited cul-de-sac streets within subdivisions and an amendment to the Zoning Ordinance which eliminated cluster subdivisions as a “by-right” use.
In early June, the Township informed the Lindquists that the Original Phase I Plan would be on the Board’s agenda at its June 25, 1997 meeting. The Lindquists informed the Township that they intended to submit a revised Phase I plan within the next few weeks, and proposed that the ninety-day statutory review period for the Original Phase I Plan be extended, as had been done several times throughout the process. The Board did not accept this proposal, and rejected the application for preliminary approval of the plan (“the First Denial Resolution”). As the result of this denial, any new proposals submitted by the Lindquists would be subject to the zoning amendments enacted in early 1997.
On September 3, 1997, the Lindquists commenced legal proceedings against the Board in the Court of Common Pleas of Bucks County. These actions were resolved by a stipulation of settlement signed by the parties on November 12, 1997, and entered as a Court Order on December 12, 1997 (“the December 1997 Order”). Un *772 der the terms of the settlement, the Board withdrew the First Denial Resolution and permitted the submission of revised Phase I plans to be reviewed under the Zoning Ordinance and SALDO as they existed on December 13, 1995. The settlement did not address the issue of how many times the Lindquists would be permitted to submit further revised plans.
On November 18, 1997, the Lindquists submitted a revised Phase I subdivision application (“Revised Phase I Plan”). In early 1998, the Lindquists and the Township met several times to discuss the Revised Phase I Plan. The Lindquists agreed to submit a further revised plan (“Further Revised Phase I Plan”), and the Board agreed to extend the review period for the Further Revised Phase I Plan to July 30, 1998.
On July 20, the Lindquists informed the Township that the Further Revised Plan I would be submitted by the end of July, and proposed that the review period be extended until the end of August. The Township declined to extend the review period.
On July 22, the Board passed a resolution (“Second Denial Resolution”), which was apparently intended to reject the Revised Phase I Plan. However, the resolution actually rejected the Original Phase I Plan. The Board subsequently realized it had rejected the wrong plan, and on August 12, 1998, passed a new resolution that “readopted and confirmed” the Second Denial Resolution and amended it to include a rejection of the Revised Plan (“Third Denial Resolution”).
Meanwhile, the Lindquists had filed the Further Revised Phase I Plan on July 31, 1998. The Township accepted the Further Revised Plan, but informed the Lindquists that it would not treat the Further Revised Plan as a revised plan under the December 1997 Order for the reason that the Second Denial Resolution had denied the subdivision application. The Third Denial Resolution set an August 31, 1998 deadline for review of the Further Revised Plan. The Lindquists informed the Township that it was obligated to treat the Further Revised Plan as a revised plan under the settlement, and that, if it treated the Further Revised Plan as a new plan, they were entitled to a ninety-day review period as provided by statute.
The Board disagreed. On August 26, 1998, the Board adopted another resolution (“Fourth Denial Resolution”), which rejected the Further Revised Plan as a revised plan. The Township also informed the Lindquists that it would accept the Further Revised Plan as a new plan, subject to review under the Zoning Ordinance and SALDO as they existed on the date of its submission. The Board eventually rejected the Further Revised Plan as a new plan on October 28,1998.
On September 3, 1998, the Lindquists filed a mandamus action in the Court of Common Pleas of Bucks County, alleging that the Revised Plan should be “deemed approved” under § 508 of the Municipalities Planning Code, Pa. Stat. Ann. tit 53, § 10508. On January 19, 2000, the Bucks County Court held that the Second Denial Resolution of July 22, 1998 had rejected the wrong plan, that the Board had failed to comply with § 508 through its failure to take action on the Revised Plan by the July 30, 1998 deadline, and that, as a result, the Revised Plan was “deemed approved.” In his opinion, Judge Clark found that “the Township ha[d] acted in this case not only in violation of Order of December 12, 1997 of the Bucks County Court, but also in violation of its own ordinances requiring review of subdivision applications.” However, the basis for the court’s ruling that the Revised Plan was “deemed approved” was the Township’s *773 failure to reject the Revised Plan by the statutory deadline.
The Township appealed the Bucks County Court Order. However, in December 2000, the parties reached a settlement that ended the state court litigation, but permitted the Lindquists to proceed with this action alleging violations of their substantive due process rights, which they had filed in federal court in March of that year. The District Court, following a six-day non-jury trial, ultimately granted judgment in favor of the Township and its Board of Supervisors.
II.
The Lindquists’ appeal challenges several aspects of the District Court’s ruling, including: (1) the application of the “shocks the conscience” standard to their substantive due process claim; (2) the determination that the Township’s actions did not violate the “shocks the conscience” standard; (3) the denial of their motion to amend their complaint to include an equal protection claim; (4) the failure to give preclusive effect to certain state court findings; and (5) the decision to exclude evidence regarding the Township’s treatment of other subdivision plans. The Township and the Board of Supervisors appeal the District Court’s denial of their post-trial motion for attorneys’ fees and costs.
A.
First, the Lindquists contend that the District Court erred in applying the “shocks the conscience” standard because such a standard is inappropriate to apply to substantive due process claims against municipalities arising from land use decisions. We exercise plenary review over the District Court’s choice and interpretation of legal standards. Beta Spawn, Inc. v. FFE Transportation Services, Inc., 250 F.3d 218, 223 (3d Cir.2001).
In United Artists, we noted that “our cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.” Id. at 399-400. We saw no reason why land-use cases should be exempted from the shocks-the-conscience test, stating that “[l]and-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with ‘improper’ motives.” Id. at 401-02. Accordingly, we conclude that the District Court applied the proper standard to the Lindquists’ claim.
B.
Second, the Lindquists argue that “the Township deliberately acted in bad faith, violated its own ordinances and customary practices and procedures and violated two separate court orders,” and that “[t]he Township participated in such egregious conduct because of their personal animus to [the Lindquists’ representative] and with the intent of preventing the Lindquists from developing their property so that the Township would be in a better position to acquire the Lindquist property at a minimal cost to the Township.” The District Court concluded that the Township “may have been negligent at times and in 1998 may have acted with improper motive toward the Lindquists and their representatives. However, there is nothing in the facts we have found to prove that the defendants’ conduct was so egregious as to be ‘conscience shocking.’ ” The Lindquists maintain that this conclusion is in error and that the Township’s actions do satisfy the standard.
We exercise plenary review over the District Court’s application of legal standards to the facts of the case. Beta *774 Spawn, 250 F.3d at 223. We review the District Court’s findings of fact for clear error. Id.
In United Artists, we joined other Courts of Appeals in applying the “shocks the conscience” standard to substantive due process claims in land use disputes. For example, in Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102 (8th Cir.1992), a developer brought a § 1983 action claiming that the city had violated its substantive due process rights by enforcing an invalid zoning plan against it. In affirming the District Court’s denial of the developer’s claim, the Eighth Circuit stated that “a state-law error, no matter how fundamental, cannot in and of itself create a federal due-process violation.” Id. at 1105. Furthermore, it noted that “[its] decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith” because “[a] bad faith violation of state law remains only a violation of state law.” Id. In its view, the enforcement of an invalid zoning ordinance was not a “truly irrational” governmental action giving rise to a substantive due process claim. Id.
The First Circuit considered a similar situation in PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28 (1st Cir.1991). There, a developer brought a civil rights action against a Puerto Rico agency following the agency’s rejection of the developer’s application for a construction permit. The court held that “[the developer’s] allegations that [agency] officials failed to comply with agency regulations or practices in the review and approval process for the construction drawings are not sufficient to support a substantive due process claim.” Id. at 32. The court also stated that “even assuming that [the agency] engaged in delaying tactics and refused to issue permits for the ... project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution.” Id.
These cases stand for the proposition that, without more, a violation of state law, even a bad faith violation of state law, will not support a substantive due process claim in a land-use dispute. See also Baker v. Coxe, 230 F.3d 470, 474 (1st Cir.2000) (“[E]ven an arbitrary denial of [a building] permit in violation of state law — even in bad faith — does not rise above the constitutional threshold for equal protection and substantive due process claims.”); Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir.1999) (“Arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause.”) Rather, the governmental action must be so egregious and extraordinary that it “shocks the conscience.”
Here, we are not entirely convinced that there has even been a violation of state law, much less any “conscience-shocking” behavior. The Lindquists maintain that the Township’s actions were in defiance of the December 1997 Order. We view this to be not entirely clear-cut. And, even if the Township did violate the Order, the record is largely devoid of any facts that would suggest that the Township’s actions were so egregious and extraordinary that they “shock the conscience.” The Lind-quists have suggested that the Township was motivated by financial concerns and bias against their attorney, and that these motivations render the Township’s actions “conscience-shocking.” Yet, we find little evidence that the Township or its officers were motivated by pecuniary gain. In addition, although it is clear that the relationship between the Township and the Lind- *775 quists’ attorney became bitter during the course of these events, the Township’s actions cannot be said to have been due to any bias against him. The District Court concluded that while the Township “may have been negligent” and “may have acted with an improper motive,” desirous of thwarting development of the property, its conduct did not shock the conscience. We concur.
Our dissenting colleague cites Leamer v. Fauver, 288 F.3d 532 (3d Cir.2002), for the proposition that “deliberate indifference” and “protracted failure to even care” may be conscience shocking when officials have time to make unhurried judgments. Id. at 547. However, Learner involved a prison inmate challenging the deprivation of a liberty interest. Given that “[t]he assessment of what constitutes conscience-shocking behavior differs according to the factual setting,” id., the test may be more easily satisfied in a prison setting than in a land-use setting. More importantly, our view of the record does not indicate indifference or a failure to care on the part of the Township.
C.
Third, the Lindquists challenge the District Court’s denial of their motion for leave to amend their complaint to include an equal protection claim, based on the Township’s favorable treatment of a third party’s subdivision application. We review a grant or denial of leave to amend for abuse of discretion. Lake v. Arnold, 232 F.3d 360, 373 (3d Cir.2000).
The Supreme Court has stated that the Rule 15(a) mandate that leave to amend “shall be freely given when justice so requires” is to be heeded.
In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, -etc. — the leave sought should, as the rules require, be “freely given.”
Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
Here, the District Court denied the Lindquists’ motion to amend for “undue delay.” With regards to the issue of delay, our Court has stated that
the passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become “undue,” placing an unwarranted burden on the court, or will become “prejudicial,” placing an unfair burden on the opposing party. The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants.
Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir.1984), cert. denied, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (internal citations omitted). See also Cureton v. NCAA 252 F.3d 267, 273 (3d Cir.2001) (stating that “the question of undue delay requires that we focus on the movant’s reasons for not amending sooner”). Here, in its discussion, the District Court followed our directive in Adams that the Court should focus on the plaintiffs motives. First, it noted the Lindquists’ proffered reason for their two-year delay, namely, the Township’s alleged failure to turn over certain documents. Then, it disposed of this reason because the documents were public documents to which the Lindquists had access and, in addition, the Lindquists could have filed a motion to *776 compel production. In light of this reasoning, and given the fact that this case had already been pending for two years and was ready for trial, we cannot say that the District Court abused its discretion in denying the Lindquists leave to amend.
D.
Fourth, the Lindquists urge that the District Court erred when it failed to give preclusive effect to certain findings outlined in the state court’s January 19, 2000 order. We exercise plenary review over the District’s Court decision regarding the preclusive effect of a state court judgment. Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir.2002).
The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give a state court judgment the same pre-clusive effect that it would be entitled to in a court of that state. Gregory v. Chehi, 843 F.2d 111, 118 (3d Cir.1988). Thus, the District Court was required to give the state court’s findings preclusive effect if a Pennsylvania court would have been required to give them preclusive effect.
Turning to Pennsylvania law, we note that Pennsylvania has adopted the requirements of the Restatement (Second) of Judgments, regarding when a prior determination of a legal issue is conclusive in a subsequent action. Clark v. Troutman, 509 Pa. 336, 502 A.2d 137, 139 (Pa.1985). In Pennsylvania, the doctrine of issue preclusion applies if: (1) the issue decided in the prior case is identical to the one presented in the subsequent action; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the subsequent case; (4) the party or person in privity with a party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. City of Pittsburgh v. Zoning Bd. of Adjustment, 522 Pa. 44, 559 A.2d 896, 901 (Pa.1989).
Here, the January 19, 2000 state court order concluded that the Lindquists’ Revised Plan was “deemed approved” under § 508 of the Municipalities Planning Code, Pa. Stat. Ann. tit. 53 § 10508. In concluding that the Plan was “deemed approved,” the Court of Common Pleas relied solely upon facts related to the Township’s Board of Supervisors’ failure to take action upon the Plan prior to the statutory deadline. While the court did make other findings and agreed with the Lindquists that the Township had acted in violation of both its own ordinances and the December 1997 Order, these findings were not essential to its final judgment. Accordingly, issue preclusion does not apply. As a result, the District Court’s decision to give preclusive effect only to the facts that the Board had failed to take timely action and that the Revised Plan was “deemed approved” upon the Township’s failure to take action, while not giving preclusive effect to any other state court findings, was appropriate.
E.
Fifth, the Lindquists claim that the District Court abused its discretion in making certain evidentiary rulings. During the course of the trial, the Lindquists sought to introduce documents and to solicit testimony regarding the Township’s treatment of a third party’s subdivision application, the Yerkes/Orleans plan, that was pending during the same time period when the Lindquists’ application was being considered, as relevant to the issue of motive. In sustaining the Township’s objection, the District Court noted that evidence regarding the Yerkes/Orleans application *777 was not necessarily probative of whether the Township had acted improperly with regards to the Lindquists’ application because there were different facts, because the Township could exercise discretion in granting waivers, and because the complexity and uniqueness of these situations makes comparisons cumbersome if not impossible. We review the District Court’s ruling regarding the admissibility of evidence for abuse of discretion. Rinehimer v. Cemcolift, Inc., 292 F.3d 375 (3d Cir. 2002).
In assessing whether the Lindquists had proven their claim, the key question before the Court was whether the Township’s treatment of the Lindquists “shocked the conscience,” not whether the Township treated the Lindquists differently than it treated a third party. The evidence the Lindquists sought to introduce had nothing to do with the Township’s treatment of the Lindquists.[4] Further, even if it were arguably relevant, we agree with the District Court that ascertaining whether the Yerkes/Orleans development was comparable to the Lindquist development in all important respects would have forced the District Court to conduct “a trial within a trial.” As a result, we conclude that the District Court did not abuse its discretion in refusing to permit the introduction of this evidence.[5]
F.
Finally, the Township and the Board claim the District Court erred when it denied their motion for attorneys’ fees. We review a denial or grant of attorneys’ fees for abuse of discretion. Loughner v. University of Pittsburgh, 260 F.3d 173, 177 (3d Cir.2001).
42 U.S.C. § 1988 provides that “in any action or proceeding to enforce a provision of § ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs.” A prevail *778 ing defendant is entitled to attorney’s fees upon a finding that the plaintiff’s action was frivolous, unreasonable or without foundation. Barnes Found, v. Township of Lower Merion, 242 F.3d 151, 157-58 (3d Cir.2001).
The Township and the Board of Supervisors contend that they, as prevailing defendants, are entitled to attorneys’ fees because the Lindquists’ lawsuit was not brought to redress the Lindquists’ alleged constitutional grievances, but rather to generate attorneys’ fees for the Lind-quists’ legal representative. Even if we were to credit this theory, it does not necessarily render the action frivolous, unreasonable or without foundation. We note that at the time the Lindquists brought this action, the standard applicable to their due process claim was not settled. Only after the conclusion of trial did we announce in United Artists that a plaintiff pursuing a substantive due process claim in a land-use dispute must prove that the defendant’s conduct “shocked the conscience.” 316 F.3d at 401. This standard departed from our prior precedent, under which a plaintiff merely had to prove that the defendant had acted with an improper motive. See, e.g., Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.1988). Here, the District Court stated that the Township and the Board “may have acted with an improper motive toward the Lind-quists and their representatives,” which would suggest that it might have been possible for the Lindquists to prevail under the “improper motive” standard. In light of the fact that the Lindquists might have been able to succeed under the standard in effect at the time they brought their claim, we cannot say that the action was frivolous, unreasonable or without foundation. Accordingly, the District Court did not abuse its discretion in denying attorneys’ fees.
III.
For the reasons stated above, we will affirm.

. James O. Lindquist died while this case was before the District Court. Cora F. Lindquist was substituted as executrix of his estate.

. Under SALDO, a party seeking subdivision and land development approval must first file an application and plans for preliminary approval by the Board. In addition, the party must also submit an application for final plan approval. The Board is the only Township entity with the authority to grant approvals and denials of these plans.

. The zoning ordinance permitted the cluster subdivision of a property as a "by-right” use. Thus, the Board would have been required to accept this alternate plan if formally submitted. However, the alternate plan would have subdivided and developed a portion of the property that the Township wanted to preserve.

. The dissent posits that even if the evidence of the treatment afforded Yerkes/Orleans was not probative of the motive of the Township vis a vis the Lindquist, it could be probative as to whether the treatment "shocked the conscience." We are at a loss to determine how this could be so unless the facts of the two situations were the same. The Lindquists contend that the same sixty reasons listed to justify denial of their application were listed as conditions for approval of the Yerkes/Orleans preliminary plan, and the dissent appears to read this contention as meaning the Lindquists' plan was rejected for the same reasons as the Yerkes/Orleans plan was approved. However, the record merely indicates that the Township had some of the same problems with the Lindquists' plan that the Township’s consultants had with the Yerkes/Orleans preliminary plan, and that the consultants conditioned their recommendations regarding approval of the Yerkes/Orleans plan on these problems being rectified. It does not indicate what steps the Yerkes/Orleans developers took to address the problems identified in the preliminary plan, nor that the final Yerkes/Orleans plan eventually approved by the Township continued to exhibit these problems. The proffered evidence would only be relevant to the District Court’s inquiry to the extent that the facts of the two proposed developments were virtually identical. Considering the maxim that every parcel of land is unique, this was highly unlikely.

. Our dissenting colleague believes that, as an alternative to finding a constitutional violation, we should remand the claim so that the Lindquists could have the opportunity to present new evidence in light of the heightened standard adopted between the close of trial and the District Court's judgment. While we have, as the dissent points out, acknowledged that "a change in law may warrant the reopening of a case where additional [evidence] would be pertinent to the change of law.” Skehan v. Bd. of Trustees of Bloomsberg State College, 590 F.2d 470, 479 (3d Cir.1978), rev’d on other grounds by Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir.1985), here the Lindquists did not move to reopen for additional proof in light of the changed standard.