PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2354
_____

DARRYL POWELL,

Appellant

v.

RALPH WEISS; DIANE YALE;
JOHN E. WETZEL, Secretary;
MICHAEL C. POTTEIGER, Chairman of the Board;
JOHN DOE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 13-cv-00070)
District Judge:  Honorable John E. Jones, III
_____

Argued January 15, 2014
Before:  AMBRO, HARDIMAN and
GREENAWAY, JR., *Circuit Judges*

(Filed:  July 8, 2014)

Brian J. Zeiger [Argued]
Levin & Zeiger
123 South Broad Street
Suite 1200
Philadelphia, PA 19109
        *Attorney for Appellant*

Laura J. Neal [Argued]
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050
        *Attorney for Appellees Ralph Weiss, Diane Yale and Secretary, Pennsylvania Department of Corrections*

Alan M. Robinson [Argued]
Pennsylvania Board of Probation & Parole
Executive Offices
1101 South Front Street
Suite 5100
Harrisburg, PA 17104
        *Attorney for Appellee Michael Potteiger*

———————

OPINION

———————

HARDIMAN, *Circuit Judge*.

At issue in this appeal is whether Pennsylvania inmates have a constitutionally protected liberty interest in

2

the expectation of release to a community correctional center. We hold they do not.

## I

Appellant Darryl Powell is a former Pennsylvania state inmate whose suit under 42 U.S.C. § 1983 was dismissed by the United States District Court for the Middle District of Pennsylvania. The gravamen of Powell's complaint was that the Pennsylvania Department of Corrections (DOC) violated his Fourteenth Amendment right not to be deprived of liberty without due process of law when it revoked its decision to release him to a community correctional center. The DOC concedes that the revocation was based on an improper calculation of Powell's sentence.

Most of the prolix details underlying Powell's interactions with the Pennsylvania criminal justice system are not germane to the question presented here, so we recite only the essential facts.

In July 2002, Powell was sentenced in three separate criminal actions before two judges of the Philadelphia County Court of Common Pleas. Thereafter, Powell challenged the DOC's calculation of his overall prison term in the Pennsylvania intermediate appellate courts, contending that his sentences should run concurrently, not consecutively. Powell's term was then recalculated, and based on that recalculation, he was granted prerelease status and scheduled for transfer to a community correctional center—an extension of the state correctional system designed to reintegrate inmates into the community—on February 12, 2007. Appellee Ralph Weiss, a DOC employee who was sued in his

3

individual capacity,[1] processed the paperwork for Powell's transfer, during which time he reviewed Powell's sentence calculation in accordance with standard DOC procedure. As part of his review, Weiss sought clarification, and one of the judges who presided over Powell's criminal cases advised Weiss by letter dated February 8, 2007—just four days prior to Powell's scheduled transfer—that his sentences were to run consecutively. In accordance with this response, Weiss recalculated Powell's overall prison term, which resulted in Powell being denied prerelease without notice or a hearing. Although Powell eventually was granted prerelease status in July 2008 and transferred to a community correctional center, he alleged he was deprived of a protected liberty interest during the approximately seventeen months that he remained incarcerated before his transfer.

In 2009, Powell filed a petition for writ of mandamus in which he asked the Commonwealth Court to compel the

---

[1] Powell's complaint named not only Weiss, but also DOC employees Diane Yale and John Wetzel, as well as the Chairman of the Pennsylvania Board of Probation and Parole, Michael Potteiger. All defendants were sued in their individual and official capacities. In the District Court, Powell conceded that his official capacity claims were barred by the Eleventh Amendment to our Constitution. At oral argument before us, Powell conceded that, because he failed to plead facts that personally implicated Potteiger, Yale, and Wetzel, only Weiss's conduct remained at issue. Tr. at 3, 5; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

DOC to reduce his prison term by running his three sentences concurrently. While that petition was pending, Powell was paroled from the DOC's custody on August 31, 2009. Over a year later, in January 2011, the Commonwealth Court issued a writ of mandamus after holding that Powell's trial judge had no authority to modify his sentence with her February 8, 2007, letter to the DOC. *See Commonwealth of Pa. ex rel. Powell v. Pa. Dep't of Corr.*, 14 A.3d 912, 913–14 (Pa. Commw. Ct. 2011). Pursuant to the Commonwealth Court's order, the DOC recalculated Powell's sentence, which resulted in a maximum sentence date of May 22, 2012. This recalculation gave rise to Powell's claim that he was deprived of another liberty interest when he was supervised as a parolee by the Board of Probation and Parole until December 2012, some seven months beyond the appropriate date.

The District Court dismissed Powell's complaint against Weiss for two reasons. First, it held that Weiss's miscalculation of Powell's sentence did not violate due process because Powell had no liberty interest in his prerelease status and his anticipated transfer to a community correctional facility. Second, although the Court held that Powell's unwarranted parole supervision did deprive him of a cognizable liberty interest, it determined *sua sponte* that this claim was precluded by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).

Powell timely appealed.

II

5

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over its final order under 28 U.S.C. § 1291.

We review the District Court's dismissal order de novo. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). In doing so, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).

III

On appeal, Powell maintains that he had a protected liberty interest in his prerelease status and anticipated transfer to a community correctional center. Thus, he contends that the District Court erred when it held that Weiss's miscalculation—and the subsequent revocation of his prerelease status—did not violate his Fourteenth Amendment right to due process of law.

We sympathize with Powell because he was understandably disappointed when his anticipated transfer to a community correctional center was rescinded through no fault of his own. Though Powell pleaded no facts to this effect, the parties presume that residents of community correctional centers enjoy greater privileges and relaxed restrictions compared to those who remain incarcerated in state correctional facilities. Nevertheless, the Supreme Court has "reject[ed] . . . the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." *Jago v.*

*Van Curen*, 454 U.S. 14, 17 (1981) (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)) (internal quotation marks omitted). Instead, our inquiry concerns "not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property language of the Fourteenth Amendment.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Protected liberty interests "arise either from the Due Process Clause or from state-created statutory entitlement." *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (quoting *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)). We have characterized the former as an "independent due process liberty interest" and the latter as a "state-created liberty interest." *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010). We shall consider each liberty interest in turn.

A

With respect to an inmate's independent due process liberty interest, the Supreme Court has held:

> As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.

*Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Asquith v. Dep't of Corr.*, 186 F.3d 407, 410 (3d Cir. 1999). Thus, due process is implicated "when severe changes in conditions of

7

confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Renchenski*, 622 F.3d at 325 (finding that due process must be afforded before sex offender conditions may be imposed on an inmate who was not convicted of a sexual offense); *see also Vitek v. Jones*, 445 U.S. 480, 487 (1980) (holding that a prisoner convicted of robbery may not be involuntarily transferred to a mental hospital without process). Unlike *Renchenski* and *Vitek*, here Weiss's administrative error resulted in no change to Powell's conditions of confinement; although Powell had been scheduled for transfer, he had not actually been released to the community correctional center. Accordingly, he remained in confinement in accordance with his sentence.

On appeal, Powell emphasizes that his case involves the *revocation*, not the mere denial, of his prerelease status, and that a protected liberty interest attached once that status was granted. Powell's argument is not without force, as the Supreme Court has held that a Fourteenth Amendment interest may arise once an inmate is granted a substantial, albeit conditional, freedom. *See Morrissey*, 408 U.S. at 482 (noting that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty" entitled to protection by the Fourteenth Amendment). But the Supreme Court has also clarified that an inmate's mere anticipation of freedom, when a privilege has been granted but not yet implemented, does not give rise to a constitutionally recognized liberty interest. *Jago*, 454 U.S. at 21–22.

Indeed, the Supreme Court's decision in *Jago*, which concerned a prison's revocation of its promise of parole, governs our analysis in Powell's case. There, the inmate had

8

been informed he would be released on parole, and pursuant to the parole board's order, completed prison prerelease classes and was measured for civilian clothes. *Id.* at 14–15. Before Jago's scheduled release, however, the board rescinded his parole order without a hearing after learning that Jago had been untruthful during his evaluation. *Id.* at 15. In the ensuing suit, Jago claimed that he had a protected liberty interest in his anticipated parole because the board's notification had created a "mutually explicit understanding[]" of release that was entitled to due process protection. *Id.* at 16 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (finding that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing")). The Supreme Court rejected this argument. It ruled that *Sindermann*'s implied-contract principle was "limited to the creation of property interests" under the Fourteenth Amendment, and that "[s]uch [contract] principles do not . . . readily lend themselves to determining the existence of constitutionally protected liberty interests in the setting of prisoner parole." *Id.* at 18. Further, the Court reasoned that if an implicit understanding could be sufficient to trigger due process protections, it "would severely restrict the necessary flexibility of prison administrators and parole authorities" in operating penal systems. *Id.* at 19. Accordingly, while Jago had sustained a "grievous loss" upon the rescission of his parole, the Court held that his anticipated release did not give rise to a liberty interest under the Constitution. *Id.* at 17–18.

If Jago's legitimate expectation of parole did not result in a cognizable liberty interest, it follows *a fortiori* that

9

Powell did not have such an interest in his anticipated transfer to a community correctional center. Indeed, Jago suffered more significant adverse consequences as a result of the state's *volte-face* than did Powell here. *Cf. Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 664–65 (3d Cir. 2011) (finding, after comparing the inmate's predicament to Jago's, that he had no expectation of release on an erroneously calculated date). For Jago, parole offered significant freedoms: "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." *Morrissey*, 408 U.S. at 482. Powell, on the other hand, concedes that residence in a community correctional center often entails fewer liberties than parole. *See* Powell Br. at 9, 11 (noting that the Third Circuit has found no liberty interest in retaining certain types of prerelease status after comparing the liberties at issue with those of parole). Furthermore, Jago had been granted parole from a sentence of 100 years, so his parole revocation radically changed his future from imminent release to life in prison. In contrast, Powell alleges that he was deprived of spending seventeen months in a less restrictive environment. Indeed, Powell's case is more sympathetic in only one respect: Jago contributed to his parole revocation when he lied during his evaluation, while Powell is without fault in respect to the revocation of his prerelease status. This distinction is unavailing to Powell, however, because we have noted that a plaintiff's culpability is irrelevant to the question of whether he has a protected liberty interest. *See Evans*, 645 F.3d at 665 n.23 (noting that the inmate was "blameless" does not "detract from the basic point concerning a constitutionally protected liberty interest").

Powell next contends that we cannot evaluate the nature of his liberty interest in the abstract. Pointing to our decision in *Asquith*, he argues that courts must consider "the specific characteristics of an inmate's pre-release program when determining if a liberty interest is at stake." Powell Br. at 11. He therefore urges us to remand so that he may develop the factual record and demonstrate the "type and degree of liberty at stake" in his case. Powell Br. at 14.

In *Asquith*, the plaintiff was removed from his work release program for a purported violation that was found invalid; he claimed that the state could not deny his reinstatement to the program without a hearing. 186 F.3d at 409–10. We engaged in a careful, fact-specific inquiry of the work release program at issue, concluding that the restrictions inherent in the program amounted to "institutional confinement." *Id.* at 410–11. Because the plaintiff remained in institutional confinement as a participant in his specific program, we reasoned, he had no liberty interest in that privilege. *Id.* at 411 (citing, *inter alia*, *Meachum*, 427 U.S. at 224–25 (an inmate in institutional confinement has no cognizable interest in remaining in a preferred facility within the state's prison system)).

However, *Asquith* does not apply to Powell's case, and therefore we see no need for further factual discovery. In *Asquith*, we considered the nature of the inmate's program because he had already participated in it and enjoyed the freedoms associated therewith. In contrast, Powell had been scheduled for, but not yet transferred to, the community correctional center at the time his prerelease status was rescinded. Accordingly, it would be inappropriate for us to consider his *potential* liberties in the community correctional center when ascertaining the nature of his deprivation. *See*

11

*Morrissey*, 408 U.S. at 482 n.8 ("It is not sophistic to attach greater importance to a person's justifiable reliance in *maintaining* his conditional freedom . . . than to his mere *anticipation* or *hope* of freedom.") (quoting *United States ex rel. Bey v. Conn. Bd. of Parole*, 443 F.2d 1079, 1086 (2d Cir. 1971)) (internal quotation marks omitted and emphases added).

For the reasons stated, we conclude that Powell did not have an independent due process liberty interest in his prerelease status and associated transfer. We turn now to whether he had a state-created liberty interest.

B

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a prisoner is deprived of a state-created liberty interest if the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Shoats*, 213 F.3d at 143 (adopting *Sandin*). In this inquiry, we do not compare the prisoner's own life before and after the deprivation. Rather, "[t]he baseline for determining what is 'atypical and significant'—the 'ordinary incidents of prison life'—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Asquith*, 186 F.3d at 412 (quoting *Griffin v. Vaughn*, 112 F.3d 703, 706 & n.2 (3d Cir. 1997)).

With the loss of his prerelease status, Powell remained in prison for the duration of his term—not an "atypical or significant hardship" for a convicted criminal. *See id.* (holding that a prisoner had no state-created liberty interest in

12

retaining his prerelease status and remaining in a work release program); *see also Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (revoking an inmate's prerelease status, removing him from work release, and returning him to prison did not deprive him of a liberty interest). And while the parties presume that Powell would have experienced greater restrictions in the general prison population than he would in a community correctional center, this did not impose an "atypical and significant hardship" relative to the "ordinary incidents of prison life." *Cf. Fraise*, 283 F.3d at 522 (finding there was no deprivation when an inmate was transferred from a low-security to high-security correctional facility).

Powell relies on *United States ex rel. Flores v. Cuyler*, 511 F. Supp. 386 (E.D. Pa. 1981), to contend that his status gave him a state-created "quantum of liberty" protected by due process. *Id.* at 390. The district court in *Flores* held that the revocation of an inmate's prerelease status constituted a deprivation of liberty, as he "lost something when he was suspended from [his] status: eligibility to be considered for home furloughs." *Id.* "That eligibility represented some quantum of liberty, and though the quantum may have been small, it was entitled to due process protection." *Id.* Powell claims that his case is analogous to *Flores*, as the prison rescinded his eligibility for transfer to the community correctional center after his prerelease status had been granted.

*Flores* built on our decision in *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980), in which we held that a discretionary program—not unlike the prerelease status sought by Powell—could give rise to a protected liberty interest if state law or regulations articulated specific criteria

13

for participation. *Id.* at 1007. Our decision followed *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979), which instructed that the existence of a state-created liberty interest was a "case-by-case" inquiry that depended on whether the statute creating the privilege limited the state's discretion in granting the privilege. *Id.* at 12. Thus, while a state was not obligated to create a discretionary program, its use of binding requirements to administer that program resulted in a protected liberty interest. *See Hewitt v. Helms*, 459 U.S. 460, 472 (1983) (relying on *Greenholtz* to hold that "mandatory language" in the relevant statute is an important factor in finding a liberty interest).

In *Winsett*, an inmate in the Delaware correctional system had met the eligibility criteria for the state's work release program; nonetheless, the prison refused to grant him work release status because it feared that his release would result in public outcry. 617 F.2d at 1000. We held that Delaware, by promulgating specific standards for the administration of its work release program, had created a protectible liberty interest in participation by inmates who had met those criteria. *Id.* at 1006–07. It therefore followed that the prison's consideration of other impermissible factors in denying the inmate's application for work release violated his due process rights. *Id.* at 1007. *Flores* expanded on *Winsett*'s holding: if *Winsett* found that a due process violation existed when an inmate sought to obtain prerelease status, the district court reasoned, then the facts in Flores's case "more strongly favor[ed] a finding of a protectible liberty interest." 511 F. Supp. at 390. Indeed, "Flores [was] not claiming that he was entitled to due process when he *applied* for pre-release status but rather that he was entitled to

14

due process when he was *suspended* from that status." *Id.* (emphasis added).

In our view, Powell's reliance on *Flores* is problematic because *Winsett* and its progeny are no longer good law. In *Sandin*, the Supreme Court clarified its standard for finding a state-created liberty interest, rejecting the "case-by-case approach" espoused by *Greenholtz* and its progeny. *See Sandin*, 515 U.S. at 481–82. The Supreme Court noted that *Greenholtz*'s approach required courts to delve into the minutiae of prison regulations and search for mandatory language that would entitle inmates to state-conferred privileges—a task that "strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id.* at 483 (citing *Hewitt* and *Greenholtz* as examples). This produced two "undesirable effects." *Id.* at 482. First, *Greenholtz* discouraged the state from codifying prison procedures that served the worthwhile function of guiding subordinate employees in their exercise of the warden's discretion. *Id.* Second, this approach required federal courts to scrutinize the "day-to-day management of prisons," undermining the Court's expressed interest in "afford[ing] appropriate deference and flexibility to state officials trying to manage a volatile [prison] environment." *Id.* The Court thus articulated the standard we apply here: state-created liberty interests are "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. We adopted this test in *Shoats*, recognizing that *Sandin* "announced a *new standard* for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees." *Shoats*, 213 F.3d at 143 (emphasis added).

15

Because *Winsett*—and by extension, *Flores*—rested on *Greenholtz*'s now-discredited approach, it, too, cannot stand. Thus, to the extent Powell likens his case to *Flores*, it does not advance his cause.[2]

For these reasons, Powell has neither an independent due process nor a state-created liberty interest in his revoked prerelease status and transfer. Weiss's miscalculation, therefore, did not deprive Powell of a Fourteenth Amendment right.

IV

Powell also contends that he was deprived of a protected liberty interest when he was supervised on parole seven months past his maximum sentence date, and that the

---

[2] We also note that Powell could not have claimed entitlement to a state-created liberty interest even under the *Greenholtz* case-by-case framework. Unlike the Delaware program in *Winsett*, Pennsylvania law provides no guarantee that an inmate's prerelease status will not be revoked. Under the relevant statute, "[i]f any inmate violates the rules or regulations prescribed by the [B]ureau [of Corrections], his release privileges may be withdrawn." 61 Pa. Cons. Stat. § 1053. The implementing regulation in turn provides that an "inmate's privilege to participate in pre-release programs may be suspended or revoked for administrative or disciplinary reasons." 37 Pa. Code § 94.3(a)(10). Powell's status was revoked for an administrative, albeit erroneous, reason: the DOC recalculated his sentence in accordance with routine operating procedures and, based on that miscalculation, found that he was no longer eligible for prerelease.

16

District Court, while recognizing that interest, erred in finding that his claim was barred by *Heck v. Humphrey*.

Under *Heck*, inmates cannot state a claim under section 1983 unless their "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 487. This rule applies if "success in [the] action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). But Powell's claim for wrongful supervision does not constitute a collateral attack against his sentence. Powell has successfully challenged the duration of his sentence in the Commonwealth Court, which in January 2011 held that the DOC had miscalculated his term. *See Powell*, 14 A.3d at 913–14. His civil rights claim, therefore, cannot be dismissed pursuant to *Heck* because his sentence was invalidated by an appropriate state tribunal. *See* 512 U.S. at 487.

We can, however, affirm for any reason supported by the record, *see Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1145 n.1 (3d Cir. 1983), and the record demonstrates that Weiss had no involvement in Powell's supervision on parole. The Board of Probation and Parole, not the DOC, has exclusive authority over parole supervision. *See* 61 Pa. Cons. Stat. § 6132. Because Powell asserted a claim only against Weiss, an employee of the DOC, we will affirm the District Court's order dismissing the wrongful supervision claim.

\* \* \*

17

For the reasons stated herein, we hold that Powell failed to state a claim for violation of his constitutional right to due process because he had no cognizable liberty interest in his anticipated release to a community correctional center. Nor did Powell state a claim against an appropriate employee of the Board of Probation and Parole in respect to his claim for wrongful parole supervision. Accordingly, we will affirm the order of the District Court dismissing Powell's complaint.