**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1329
_____

TUCKER INDUSTRIAL LIQUID COATINGS, INC.,
Appellant

v.

BOROUGH OF EAST BERLIN;
DAVID RICHARDS, Council Member of Borough of East Berlin;
ROBERT CLAYTON, Council Member of Borough of East Berlin;
DAVID WOODWARD, Council Member of Borough of East Berlin;
CHARLES PHILLIPS, Council Member of Borough of East Berlin;
WILLIAM POWELL, Council Member of Borough of East Berlin;
STANLEY HOLLENBAUGH, Council Member of Borough of East Berlin
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 11-cv-01416)
District Judge: Honorable John E. Jones III
_____

Submitted Under Third Circuit LAR 34.1(a)
January 28, 2016
_____

Before: VANASKIE, SHWARTZ, and RESTREPO, *Circuit Judges*.

(Filed: August 4, 2016)
_____

OPINION*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

_____

RESTREPO, *Circuit Judge*.

Tucker Industrial Liquid Coatings, Inc. ("Tucker" or "Appellant") appeals two orders of the District Court. The first order, among other things, granted Appellees'[1] motion to dismiss Tucker's substantive due process claim for failure to state a claim on which relief can be granted. The second order granted Appellees' motion for summary judgment on Tucker's equal protection claim. For the reasons that follow, we will affirm both orders.[2]

**I**

In 1993, Bernard Tucker and his son Brian Tucker founded Tucker Industrial Liquid Coatings, Inc., a company specializing in the application of industrial coatings to component parts manufactured by others. In 1998, Tucker moved to its current location at 407 North Avenue, East Berlin, Pennsylvania.

In 2002, the Borough of East Berlin ("Borough") revised its zoning ordinance. As a result, the North Avenue facility was zoned in a "mixed use" district. "Light industrial use" – Tucker's existing use of its property – was only allowed in a "mixed use" district

---

[1]    "Appellees" refers to David Richards, Robert Clayton, David Woodward, and Charles Phillips.

[2]    We consider the facts alleged in Tucker's Third Amended Complaint in reviewing the dismissal of Tucker's substantive due process claim. We consider the full record in reviewing Tucker's equal protection claim, which was resolved at summary judgment.

by way of special exception.[3]  In 2005, Tucker wanted to expand its operations by building a 20,800 square foot addition on the North Avenue property.  Before construction began, Tucker, through its contractor, asked Borough Manager Michael Thoman what it needed to do to comply with the Borough's regulations.  Thoman was the Borough Permit Officer, Code Enforcement Officer, and Zoning Officer at the time.  Tucker applied for, and was ultimately granted, the following: (1) a Borough Building Permit;[4] (2) an Adams County Building Permit; and (3) a Use and Occupancy Permit.[5]  Thoman determined that these documents were the only documents Tucker needed for the expansion.  After receiving the permits and spending approximately $1,200,000 on the project, Tucker completed the North Avenue addition in 2006.

In early 2008, Tucker continued its expansion of operations in the Borough by purchasing the former Tyco facility located on East King Street for approximately $3,600,000.  Tyco previously used the facility to manufacture electronic components for communications and consumer products, and Tucker wanted to use the facility in the same way it used the North Avenue facility – to apply industrial coatings to various parts.

Tucker's tenure in East Berlin was not without its issues.  At some point after

---

[3]     Though the parties' briefing does not make this clear, we assume that Tucker's light industrial use of the pre-expansion North Avenue facility was "grandfathered in," since that use predated the 2002 zoning revisions.

[4]     Tucker's application for the Borough Building Permit was not signed by anyone on behalf of Tucker, and included the wrong business name – Trucker Property LP.  In addition, the Borough Building Permit itself did not indicate that a special exception would be required, despite that fact that Tucker proposed "light industrial use" in a "mixed use" zone.

[5]     The Use and Occupancy permit was not granted until September 25, 2006, which was some time after Tucker began using and occupying the new addition.

Tucker relocated to the North Avenue facility, the Pennsylvania Department of Environmental Protection ("DEP") discovered problems at the North Avenue facility, including surface coating and emissions reporting violations, and failure to obtain a plan approval and operating permit. To correct these issues, Tucker and the DEP entered into a Consent Assessment of Civil Penalty on November 27, 2002, whereby Tucker would pay a civil penalty of $5,500.

The North Avenue facility again came under regulatory scrutiny when the DEP issued Tucker a notice of violation on May 19, 2008. At issue were VOC emissions, and the operation of three spray paint booths without the appropriate approvals and operating permits. On November 14, 2008, Tucker was issued a second notice of violation by the DEP. To resolve both notices of violation from 2008, Tucker entered into a Consent Order and Agreement in April 2009. Therein, Tucker agreed, among other things, to pay a civil penalty of $154,500.

The DEP was not alone in finding fault with Tucker's operations – several Borough residents filed numerous Air Quality Complaints with the Borough about Tucker throughout 2007 and 2008. These complaints, along with similar odor complaints about other entities, were raised with the Borough Council at their regular meetings. As was the practice, all odor complaints were collected by the Public Safety Chairman and forwarded to the DEP.

As a result of an election, the Borough Council membership changed in January 2008. Appellees Richards, Philips, Clayton, and Woodward joined the Borough Council. During the March 5, 2008 Borough Council meeting the Council, which included

4

Appellees, entertained discussion about odor and air quality concerns throughout the Borough. A Tucker representative who spoke at the March 2008 meeting declined an invitation to participate in an informal discussion of the complaints that had been received to date.

On October 7, 2008, in response to the May 2008 DEP notice discussed above, Bernard Tucker sent the Borough a letter indicating Tucker had submitted a plan approval to the DEP's air quality program. On November 5, 2008, the Borough sent a letter to the DEP that replied to Tucker's plan approval application. On November 21, 2008, the DEP responded to the concerns expressed in the Borough's November 5, 2008 letter. In August 2009, the DEP held a public hearing on Tucker's proposed plan approval.

Also in August 2009, the Borough sent Tucker two enforcement notices outlining alleged violations of the Borough's zoning ordinance.[6] One notice addressed Tucker's failure to secure a special exception for light industrial use when it built the addition at the North Avenue facility. The second notice addressed Tucker's failure to secure a special exception for light industrial use of the East King Street (Tyco) facility. Thereafter, Tucker appealed these enforcement notices to the Zoning Hearing Board and requested special exceptions to operate the addition to the North Avenue facility and the East King Street (Tyco) facility for "light industrial uses." The Zoning Hearing Board held hearings on these applications on October 27, 2009, December 8, 2009, January 26,

---

[6]     Prior to sending these enforcement notices, one of the Appellees visited the DEP offices on multiple occasions to review Tucker's DEP file.

2010, March 16, 2010, April 13, 2010, April 27, 2010, May 18, 2010, and May 25, 2010. On July 6, 2010, the Zoning Hearing Board announced its decision and concluded: (1) Tucker did not have a vested right in the light industrial use of the addition to the North Avenue facility; (2) Tucker was not entitled to a continuation of Tyco's non-conforming light industrial use of the East King Street facility; and (3) Tucker had failed to demonstrate the right to a special exception for light industrial use at either facility.

On August 5, 2010, Tucker filed a land use appeal from the decision of the Zoning Hearing Board in the Court of Common Pleas of Adams County, Pennsylvania. On December 6, 2011, the Court of Common Pleas affirmed in part and reversed in part the Zoning Hearing Board's determinations. Specifically, the court: (1) denied Tucker's claim that its due process rights to a fair and impartial tribunal were violated; (2) reversed the Zoning Hearing Board's determination that Tucker was not entitled to a vested right in the use of the addition at the North Avenue facility; and (3) affirmed all other findings and conclusions made by the Zoning Hearing Board.

Tucker commenced this action by filing a Complaint in the United Stated District Court for the Middle District of Pennsylvania on August 1, 2011. Eventually, Tucker filed a Third Amended Complaint, which the Appellees moved to dismiss. The District Court granted the motion with respect to Tucker's substantive due process claim, procedural due process claim, and municipal liability claim under *Monell v. New York City Deepartment of Social Services.*, 436 U.S. 658 (1978). The District Court permitted Tucker's equal protection claim to proceed. Following the close of discovery, Appellees moved for summary judgment on Tucker's equal protection claim. The District Court

6

granted the motion, thereby terminating Tucker's last remaining claim. This timely appeal followed, which challenges the District Court's dismissal of Tucker's substantive due process claim and the grant of summary judgment in favor of Appellees on the equal protection claim.

## II[7]

Tucker argues that the District Court erred at the motion to dismiss stage because the court "applied too stringent of a pleading standard and failed to acknowledge that Tucker properly pled the Appellees' personal and political animus." Appellant's Br. 21. Tucker also argues that the District erred at the summary judgment stage because the court "erroneously found no genuine issue of material fact as to Tucker's equal protection claim . . . [due to] the court ignor[ing] several key pieces of evidence . . . [and] resolving [a] credibility dispute . . . ." *Id.* We disagree, and we will affirm both orders.

## A

In dismissing Tucker's substantive due process claim, the District Court concluded that "mere interference with the use and enjoyment of the North Avenue property,

---

[7] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's dismissal order de novo. *Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). "In doing so, we 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

We also review the District Court's decision on summary judgment de novo. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016). Summary judgment is appropriate where, drawing all reasonable inferences in favor of the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

7

regardless of the personal or political animus which may have motivated those actions, is insufficient to state a substantive due process claim." JA36. In doing so, the District Court relied on our decisions in *Lindquist v. Buckingham Township*, 106 F. App'x 768 (3d Cir. 2004) (not precedential), and *Eichenlaub v. Township of Indiana*, 385 F.3d 274 (3d Cir. 2004). The District Court interpreted both cases as supporting the proposition that "municipal land use actions or determinations which do not involve 'allegations of hostility to constitutionally-protected activity on the premises' do not come within the realm of egregious, conscience-shocking behavior that has long been requisite of a substantive due process claim." JA36 (quoting *Eichenlaub*, 385 F.3d at 285). The District Court found that "[t]he overwhelming weight of decisional law in this Circuit provides that land use decisions do not rise to the level of a substantive due process violation unless interference with a constitutionally-protected right, such as the right to privacy, is the motivation for or the result of the action." JA38. The District Court concluded that Tucker did not state a substantive due process violation under this matrix, and thus found that Appellees were "entitled to the full protections of the doctrine of qualified immunity."[8] *Id.*

Tucker argues that the District Court erred in ignoring the Appellees' personal and political animus for Tucker, and that we should reverse the District Court's dismissal of the substantive due process claim. Appellant's Br. 22. We find no such error.

---

[8] The District Court also noted that Tucker incorrectly relied on the "improper motive" test that originated in *Bello v. Walker*, 840 F.2d 1124 (3d Cir. 1988), was repeated in *DeBlasio v. Zoning Board of Adjustment*, 53 F.3d 592 (3d Cir. 1995), but was ultimately rejected in *United Artists Theatre Circuit v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003).

8

To succeed on a § 1983 claim, a plaintiff must "prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Under the second element, "[t]o establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

Tucker begins by stating that "[c]ases involving a real property interest are 'unquestionably' fundamental for substantive due process purposes . . . . Thus, the substantive due process clause protects Tucker's right to use its real property without interference from the government." Appellant's Br. 24 (citations omitted). Tucker next argues that "[b]ehavior is conscience shocking when a zoning controversy involves allegations of 'hostility to a constitutionally-protected activity on the premises.'" *Id.* at 25 (quoting *Eichenlaub*, 385 F.3d at 285). Tucker finally argues that "[u]se and enjoyment of property is a constitutionally protected activity." *Id.* (citing *DeBlasio*, 53 F.3d at 600-01). Under Tucker's suggested interpretation of the law outlined above, any zoning controversy that interfered with the use and enjoyment of property would automatically shock the conscience. This is not the law.

Rather, *Eichenlaub* stands for the proposition that uses that implicate a *separately protected* constitutional right are analyzed differently than uses that do not implicate a separately protected constitutional right. 385 F.3d at 285 (citing *Assocs. in Obstetrics &*

9

*Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633 (E.D. Pa. 2003)). *Eichenlaub* recognized that the district court in *Associates* was correct to analyze the way the zoning decision in *Associates* "shock[ed] the conscience" in the context of "judicial decisions that address[ed] the protection of abortion services," because abortion is a right that is constitutionally protected under the Fourteenth Amendment. *Id.* at 285. Indeed, a later reference in *Eichenlaub* makes the importance of the presence or absence of such a separate constitutional right absolutely clear. In justifying the district court's finding that the alleged misconduct did not rise above a typical zoning dispute, in *Eichenlaub* we remarked: "*The local officials are not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity* at the project site, or because of some bias against an ethnic group." *Id.* at 286 (emphasis added).

It is undisputed that Tucker's use of the property does not implicate a separately protected constitutional right, and Tucker's argument that "an extra right such as in *Associates* is only required when the dispute revolves around a purported future use," Appellant's Br. 26, is without foundation in law or reason and we reject it.

By way of example, a zoning decision that effectively prevented an owner from publishing a political newspaper would be analyzed under a framework that took into account the fact that such a use was separately protected by the First Amendment, while a zoning decision that effectively prevented an owner from manufacturing playing cards would be analyzed differently, as there is no separate constitutional protection for manufacturing playing cards. Both uses can serve as the basis for a substantive due process claim, however, the "shocks the conscience" standard will be applied differently

10

to the two, as one involves a separately protected constitutional activity and the other does not. Tucker's attempt to place all possible land uses on equal constitutional footing for what "shocks the conscience" is both unpersuasive and contrary to our precedent.

It is true that the "shocks the conscience" test "is not precise" and "varies depending on the factual context." *Eichenlaub*, 385 F.3d at 285 (citations and quotation marks omitted). However, "[w]hat is clear is that this test is designed to avoid converting federal courts into super zoning tribunals." *Id*. It is the case here, as it was in *Eichenlaub*, that "the misconduct alleged . . . does not rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test.'" *Id*. at 286. In the absence of a separately protected constitutional right, Tucker attempted to meet the shocks the conscience standard by including an allegation that Appellees were motivated by "personal and political animus." JA78. There may be zoning disputes where, in the absence of a separately protected constitutional right, allegations of personal and political animus sufficiently shock the conscience in order to state a due process claim. Here, however, Tucker's mere inclusion of the phrase "personal and political animus" in the Complaint is clearly insufficient. As the District Court correctly pointed out, "there is an absolute dearth of facts within the amended pleading to even inferentially support this broad assertion." JA38. In sum, we agree with the District Court that Tucker failed to state a substantive due process claim, and thus we will affirm its order dismissing Tucker's claim.

**B**

11

To prevail on an equal protection claim under the "class of one" theory relied on by Tucker, a plaintiff must demonstrate that: (1) it "has been intentionally treated differently from others similarly situated;" and (2) "that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In analyzing Appellee's summary judgment motion, the District Court held that Tucker "could be considered similarly situated" in all relevant respects to Pennwood Products – another business located in East Berlin. JA66-67. The District Court also held that Tucker "has failed to meet its heavy burden of showing that Defendants had no rational justification for treating Tucker differently." JA69.

On appeal, Tucker asserts that "the District Court erred by failing to recognize that Tucker contests the motives the Appellees asserted and, therefore, a triable issue of material fact existed as the Appellees were motivated by personal vendettas and not a legitimate interest." Appellant's Br. 27-28. We perceive no such error.

As correctly recognized by the District Court, JA69, a successful class of one plaintiff must show that any differential treatment it suffered was "irrational and wholly arbitrary." *Eichenlaub*, 785 F.3d at 286 (quoting *Olech*, 528 U.S. at 564) (internal quotation marks omitted). "These challenges fail when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 259 (3d Cir. 2010) (not precedential) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

On the record before the District Court, such a reasonably conceivable state of facts was present. First, when compared to Pennwood, Tucker received DEP Notices of

12

Violation that were more recent, and more severe. *Compare* JA1530-37 (showing that Pennwood's most recent DEP violation occurred on July 6, 2005, and that no Pennwood violation resulted in financial penalties or consent agreements), *with* JA507-12 (Consent Assessment of Civil Penalty dated November 27, 2002, for Tucker, which resulted in a $5,500 civil penalty) *and* JA1053-69 (Consent Order and Agreement dated April 16, 2009, addressing multiple Tucker violations from 2008, which resulted in a $154,500 civil penalty). Second, the Borough received a greater number of odor complaints about Tucker than Pennwood, and the odor problem with Tucker persisted for a longer period than the odor problem with Pennwood. *Compare* JA868-81 (containing thirteen Air Quality Complaints about Tucker over the course of eight months in 2007 and 2008), *with* JA1545-54 (containing ten Air Quality Complaints about Pennwood over the course of three months in 2007). Third, Appellees had at least some reason to believe that Tucker, unlike Pennwood, would not readily work with the Borough Council to address residents' concerns about odor problems. *See* JA1008 (Borough Council Meeting Minutes from March 5, 2008, which reflect that a Tucker representative declined an invitation to participate in informal discussions about odor complaints received about Tucker). Accordingly, we cannot say that it was irrational and wholly arbitrary for Appellees to review Tucker's DEP file or seek to remediate the impact of Tucker's light industrial use in a mixed use zone, particularly where Tucker's light industrial use of the property is what caused the environmental issues and served as the basis for the odor complaints by the Borough residents. Under these circumstances, we agree with the

13

District Court that Appellees were entitled to summary judgment on Tucker's equal protection claim.

## III

For the foregoing reasons, we will affirm both orders of the District Court.