NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2750
_____

JOHNNY MARTINEZ,
                    Appellant

v.

WARDEN GOLDEN GROVE CORRECTIONAL FACILITY;
DIRECTOR VIRGIN ISLANDS BUREAU OF CORRECTIONS;
TERRITORY OF THE VIRGIN ISLANDS; WARDEN RED ONION STATE PRISON
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 1-13-cv-00102)
District Judge: Wilma A. Lewis
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 14, 2017

Before: SMITH, Chief Judge, MCKEE, and SCIRICA, Circuit Judges

(Filed: December 11, 2018)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA,** *Circuit Judge.*

In March 2013, Johnny Martinez was transferred from a minimum security Virgin Islands prison to Red Onion State Prison, a supermax facility in Virginia, without notice or a hearing. Martinez, who was released from prison on parole on July 28, 2017, challenged this initial transfer through a counseled habeas petition in which he also sought, among other things, damages under 42 U.S.C. § 1983 for denial of procedural due process. The trial court dismissed the petition and denied leave to amend as futile, concluding the facts alleged by Martinez were not an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" necessary to trigger due process protections. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). We will affirm.

## I.

### A.[1]

Johnny Martinez pleaded guilty to second degree murder for his role in the 1997 death of Ean Pemberton and was sentenced to 35 years' imprisonment. He was incarcerated at Golden Grove Adult Correctional Facility in the Virgin Islands from the late 1990s until March 2013.

Golden Grove has lenient security procedures. Inmates may wear personal clothes rather than uniforms, they may move freely around the facility without being searched,

---

[1]    The following factual allegations are drawn from Martinez's First Amended Petition/Complaint and his proposed Second Amended Petition/Complaint. In denying Martinez's motion to file this Second Amended Petition/Complaint, the trial court considered the additional proposed factual allegations and concluded amendment was futile. For the purposes of this appeal, we assume all facts alleged in the First and Second Amended Petition/Complaint are true. *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017).

and gates between housing units may be left unlocked. By all accounts, Martinez was a responsible prisoner at Golden Grove. He had no disciplinary record, and multiple correctional officers signed affidavits attesting to his good behavior.

In March 2013, Martinez was transferred to Red Onion State Prison in Virginia. Since as early as 2001, the Virginia Department of Corrections has contracted with the Virgin Islands to house Virgin Islands prisoners. Martinez was one of approximately 65 Virgin Islands prisoners placed in Virginia prisons under this contract. Red Onion is a supermax prison described by the Washington Post as housing the "worst of the worst" inmates. J.A. 86. Martinez was neither provided notice of his transfer nor given opportunity to contest it.

**B.**

As noted, Martinez challenged his transfer by filing a counseled 28 U.S.C. § 2241 Petition for a Writ of Habeas Corpus on November 1, 2013. He thereafter filed a First Amended Petition/Complaint which, among other things, added claims for damages under 42 U.S.C. § 1983 for denial of procedural due process.

On July 3, 2014, a Magistrate Judge issued a Report and Recommendation concluding Martinez's habeas petition should be denied. The Report and Recommendation reasoned Martinez could not bring a consolidated habeas and § 1983 action. Relying on our decision in *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002), the Report and Recommendation explained that Martinez's case did not sound in habeas because it did not challenge the validity of his sentence but instead attacked the conditions of his confinement. Notwithstanding this conclusion, the Report and

3

Recommendation found merit in Martinez's § 1983 procedural due process claim. The Magistrate Judge recommended that Martinez be allowed to file an independent complaint containing his § 1983 procedural due process claim.

Martinez filed objections to the Report and Recommendation and also filed a motion for leave to file a Second Amended Petition/Complaint.[2] On March 17, 2015, the trial court adopted in part the Report and Recommendation, dismissed Martinez's petition, and denied leave to amend as futile. Although the trial court agreed with much of the Report and Recommendation's analysis, it concluded Martinez had failed to state a claim under § 1983 for denial of procedural due process. And though the court considered the additional facts alleged in Martinez's proposed Second Amended Petition/Complaint, it concluded these facts were insufficient to state a claim because they failed to allege an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" necessary to trigger due process protections. J.A. 44 (quoting *Sandin*, 515 U.S. at 484). The court accordingly denied the proposed amendment as futile and dismissed the case with prejudice.

Martinez moved for reconsideration and simultaneously sought leave to file a proposed Third Amended Complaint on March 31, 2015. The Third Amended Complaint alleged—for the first time—details about Martinez's conditions of confinement. For

---

[2] Thereafter, on January 6, 2015, Martinez filed a petition for a writ of mandamus in the Third Circuit asking us to order the trial court to rule on his pending motion for preliminary injunction. We denied the mandamus petition on February 19, 2015, without prejudice to his ability to file a new mandamus petition if the trial court had not ruled on his motion within 60 days. *See In re Martinez*, 594 F. App'x 96 (Mem) (3d Cir. 2015).

4

example, the proposed complaint asserted that Martinez had been "held in extremely restrictive isolation continuously since October 2014" and "ha[d] been denied recreation time continuously since October 2014." J.A. 140. We will not, however, consider these facts in analyzing the trial court's dismissal of the case and denial of leave to amend. These facts were not alleged in either the original habeas petition, the First Amended Petition/Complaint, or the proposed Second Amended Petition/Complaint. Rather, they appeared only after the trial court's order dismissing the First Amended Petition and denying leave to amend as futile. These alleged conditions were known or capable of being known when the original Petition was filed and could have been included in either the first or second attempts at amendment, but they were not.

Regardless, this proposed Third Amended Complaint is not properly before us on appeal. The trial court denied the motion for reconsideration on March 31, 2016, and Martinez timely appealed before the trial court acted on the motion for leave to amend. Accordingly, the trial court was divested of jurisdiction before it could rule on the motion for leave to file a Third Amended Complaint, and we will not consider it on appeal. Martinez appeals only three things: (1) the dismissal of the First Amended Petition/Complaint; (2) the denial of leave to amend to file the Second Amended Petition/Complaint; and (3) the denial of his motion for reconsideration.[3]

---

[3] Although Martinez filed a notice of appeal as to the motion for reconsideration, he did not raise this issue in his opening brief. Accordingly, this argument is forfeited. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 230 n.17 (3d Cir. 2016); *see also Hamer v. Neighborhood Hous. Serv. of Chi.*, 138 S. Ct. 13, 17 n.1 (2017) (explaining the difference between waiver and forfeiture).

**II.**

The trial court had jurisdiction over Martinez's § 2241 habeas petition under 48 U.S.C. § 1612(a) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 because a certificate of appealability is not required to appeal from the denial of a § 2241 petition. *See Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012). Our review of the trial court's decision to dismiss Martinez's § 2241 petition is plenary. *See Cradle v. United States ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002). And we review a trial court's denial of leave to amend for futility for abuse of discretion. *See Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493–94 (3d Cir. 2017).

**III.**

On appeal, Martinez asserts he pleaded sufficient facts to state a claim for denial of procedural due process and, alternatively, the trial court abused its discretion when it failed to grant his motion for leave to amend. In addition to these merits issues, Martinez contends his conditions of confinement challenge was properly brought as a § 2241 petition (rather than a § 1983 complaint) and the trial court incorrectly concluded it lacked jurisdiction over one of the defendants, the Warden of Red Onion State Prison.

In their brief, Appellees assert the case is moot because Martinez was transferred to Wallens Ridge State Prison in Virginia on April 10, 2015. On August 3, 2017, Appellees filed a motion to dismiss the appeal as moot because Martinez was granted parole and released from custody on July 28, 2017. In keeping with our obligations to assure ourselves of our jurisdiction, *see Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 252 (3d Cir. 2017), we reject Appellees' mootness arguments. This

6

case is not moot because Martinez seeks damages for his alleged procedural due process injury. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

We may affirm the trial court for any reason supported by the record, *MRL Dev. I, LLC v. Whitecap Inv. Corp.*, 823 F.3d 195, 202 (3d Cir. 2016), and because we agree with the trial court's disposition on the merits of this case, we need not address any of the parties' remaining arguments.

### A.

In order to state a claim for denial of procedural due process, Martinez must show that: "(1) [Appellees] deprived him of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures [Appellees] made available to him did not provide due process of law." *Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). Martinez alleged he received no process respecting his transfer to Red Onion, so our focus is on the first factor—whether he was deprived of a liberty interest. This liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or it "may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

### 1.

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). "As

7

long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Powell v. Weiss*, 757 F.3d 338, 342 (3d Cir. 2014) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). Thus, on these facts, Martinez cannot show deprivation of a liberty interest guaranteed by the Constitution based on his transfer to a more restrictive prison. This does not end our inquiry, however, because a state-created liberty interest could still trigger due process protections.

**2.**

To establish the existence of a state-created liberty interest triggering due process protections, the right alleged must confer "freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (2017) (quoting *Sandin*, 515 U.S. at 484). To determine if something is an "atypical and significant hardship," we consider two factors: "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* at 560 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). "In this inquiry, we do not compare the prisoner's own life before and after the deprivation. Rather, the baseline for determining what is atypical and significant—the ordinary incidents of prison life—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Powell*, 757 F.3d at 344 (quotation marks and citations omitted).

8

The Supreme Court established the "atypical and significant hardship" test in *Sandin v. Conner*, 515 U.S. 472, 484 (1995). There, the Court held there was no liberty interest where an inmate was placed in solitary confinement for thirty days as discipline for disruptive behavior because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Id.* at 486.

Nevertheless, ten years later in *Wilkinson v. Austin*, the Court held there was a liberty interest where inmates were placed indefinitely in a supermax facility in Ohio. 545 U.S. 209, 224 (2005). Inmates at the facility in question were held in solitary confinement, prohibited from almost all human contact, and allowed outside of their cells for just one hour a day. *See id.* Two additional factors distinguished the Ohio supermax from other solitary confinement facilities: (1) inmates were indefinitely placed in the facility with only an annual review; and (2) placement in the facility disqualified an otherwise eligible inmate for parole consideration. *See id.* "While any of these conditions standing alone might not be sufficient to create a liberty interest," the Court explained that "taken together they impose an atypical and significant hardship within the correctional context." *Id.*

Martinez's First Amended Petition/Complaint and proposed Second Amended Petition/Complaint are devoid of any factual allegations regarding his conditions of confinement. He describes only the size of the cells and asserts that Red Onion is a supermax facility. He never describes his own confinement, *e.g.*, whether he was isolated, under what conditions he was confined, or whether these conditions were indefinite. Martinez instead relies on *Wilkinson* and Red Onion's status as a supermax facility to

9

claim he has a liberty interest at stake. But without factual allegations concerning

Martinez's conditions of confinement, the trial court could not have reasonably inferred

that he faced an atypical, significant hardship. Accordingly, Martinez has failed to allege

a liberty interest in his condition of confinement triggering due process protections. *See*

*Sandin*, 515 U.S. at 484.[4]

## B.

The trial court did not abuse its discretion in denying leave to amend. Martinez

filed a counseled habeas petition and later filed a First Amended Petition/Complaint.

After a Magistrate Judge issued a Report and Recommendation, Martinez sought leave to

file a Second Amended Petition/Complaint. The trial court considered the proposed

Second Amended Petition/Complaint and correctly concluded amendment would be

---

[4]     In his brief, Martinez also relies on Virgin Islands regulations for transferring prisoners, which he alleges were violated when he was abruptly moved from Golden Grove to Red Onion. As an initial matter, Martinez did not include these allegations in his First or Second Amended Petition/Complaint. They appeared for the first time in his proposed Third Amended Complaint, which, as explained above, he filed only after the trial court dismissed the case with prejudice.

Regardless, when the Supreme Court established the "atypical and significant hardship" standard in *Sandin*, it criticized the prior regime in which courts closely examined state prison regulations. 515 U.S. at 484. This prior method for analyzing liberty interests created a "disincentive for States to promulgate procedures for prison management" and squandered judicial resources because it led to the involvement of "the federal courts in the day-to-day management of prisons." *Wilkinson*, 545 U.S. at 222. "After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484); *cf. Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) ("Although the [New Jersey Department of Corrections] does have policies regarding custodial placements, these policies and the Due Process Clause do not give an inmate a liberty interest in being housed in a particular institution or at a particular custody level.").

futile for the reasons discussed above. This was not an abuse of discretion as the facts alleged in the proposed Second Amended Petition/Complaint fail to state a liberty interest entitled to due process protections.

## IV.

For the foregoing reasons, we will affirm the trial court's dismissal of Martinez's § 2241 petition.